**EXHIBIT A**

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| | ) FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) CASE NO.: 2021-CP-10-_____ |
| | ) |
| Karen Tinsley, Terry Headley, and Wayne Scarsella, Derivatively, on behalf of the Midtown Townhomes HPR Owners Association, Inc. | ) |
| | ) |
| | ) |
| | ) **SUMMONS** |
| | ) |
| Plaintiffs, | ) |
| | ) **(Derivative Action)** |
| v. | ) **(Defective Construction)** |
| | ) **(Jury Trial Demanded)** |
| | ) |
| Lennar Carolinas, LLC a/k/a Lennar Carolinas a/k/a Coastal Carolinas Division of Lennar a/k/a Lennar Corporation, | ) |
| | ) |
| | ) |
| Defendant. | ) |

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer upon the subscribers, at their offices at 415 Mill Street, Mount Pleasant, South Carolina 29464, within thirty (30) days after the service thereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint, plus interest and costs.

Respectfully submitted,

JUSTIN O'TOOLE LUCEY, P.A.

/s/ Justin Lucey
Justin O'Toole Lucey, Esq.
Collin Fuller, Esq.
415 Mill Street
Mount Pleasant, SC 29464
(843) 849-8400 phone
jlucey@lucey-law.com
cfuller@lucey-law.com

December 30, 2021
Mt. Pleasant, SC

***Attorneys for Plaintiffs***

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | CASE NO.: 2021-CP-10-_____ |
| | ) | |
| Karen Tinsley, Terry Headley, and Wayne Scarsella, Derivatively, on behalf of the Midtown Townhomes HPR Owners Association, Inc. | ) ) ) ) | |
| | ) | **COMPLAINT** |
| Plaintiffs, | ) | |
| | ) | **(Derivative Action)** |
| v. | ) | **(Defective Construction)** |
| | ) | **(Jury Trial Demanded)** |
| Lennar Carolinas, LLC a/k/a Lennar Carolinas a/k/a Coastal Carolinas Division of Lennar a/k/a Lennar Corporation, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

Plaintiffs, Karen Tinsley, Terry Headley, and Wayne Scarsella, derivatively, on behalf of the

Midtown Townhomes HPR Owners Association, Inc., complaining of the above-named Defendant,

would respectfully allege and show the Court as follows:

## PARTIES

1.     The Midtown Townhomes a/k/a Lennar at Midtown Townhomes a/k/a Midtown

Townhomes by Lennar (hereinafter, "Midtown") is a neighborhood of approximately seventy-two

(72) townhouse style condominiums (the "Residences") located in Mount Pleasant, Charleston

County, South Carolina.

2.     The Midtown Townhomes Horizontal Property Regime (the "Regime") was created

by the execution and recordation of the Master Deed of Midtown Horizontal Property Regime (the

"Master Deed"), which was recorded at book 0908, page 559, by the Charleston County Register

of Deeds on August 20, 2020.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

3.      The Midtown Townhomes HPR Owners Association, Inc., (the "Association"), is a mutual benefit, non-profit corporation formed under the laws of South Carolina to manage the affairs of the Regime.

4.      The Association constitutes the "association of co-owners" as defined in the Horizontal Property Regime Act.

5.      Pursuant to the Master Deed, the Association is responsible for the protection, maintenance, and repair of the common elements, the limited common elements, and the other matters set forth in the Master Deed.

6.      Plaintiffs Karen Tinsley, Terry Headley, and Wayne Scarsella bring this action derivatively, on behalf of the Association (hereinafter "Plaintiff"), complaining of the above-named Defendant.

7.      For the avoidance of any doubt, Tinsley, Headley, and Scarsella are not suing Defendant in their individual capacities; they are solely bringing the Association's claims against the Defendant.

8.      Lennar Carolinas, LLC does business as or is also known as Lennar Carolinas.

9.      Lennar Carolinas, LLC does business as or is also known as Coastal Carolinas Division of Lennar.

10.     "Lennar" is more formally known as Lennar Corporation.

11.     Lennar Carolinas, LLC a/k/a Lennar Carolinas a/k/a Coastal Carolinas Division of Lennar a/k/a Lennar Corporation is hereinafter referred to as "Lennar" or "Defendant".

12.     Lennar serves as the Developer, Declarant, General Contractor, and Sales Agent of Midtown.

13.     Since its inception, the Association has been controlled and run by Defendant.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

14.     To this day, the Association remains controlled by and run by Defendant.

15.     Defendant does not provide any transparency into its operation of the Association.

16.     This matter arises out of the design, development, construction, repair, and sale of the buildings and amenities at Midtown.

17.     Lennar began construction of Midtown in late 2019 and is currently completing the construction of one or more residences.

18.     Lennar has offered these townhomes for sale as "new luxury townhomes." (https://www.lennar.com/new-homes/south-carolina/charleston/mt-pleasant/midtown-townhomes).

19.     Plaintiff Karen Tinsley ("Plaintiff Tinsley") is a citizen and resident of Charleston County, South Carolina, and owns a home within Midtown, located at 1637 Florentia Street, Mount Pleasant, South Carolina 29466 ("1637 Florentia").

20.     By virtue of her ownership, Plaintiff Tinsley is a member of the Association and has been since she purchased her residence on or about February 26, 2021.

21.     Plaintiff Tinsley has been a member of the Association at all times pertinent to the matters complained of in this derivative action.

22.     Plaintiff Terry Headley ("Plaintiff Headley") is a citizen and resident of Charleston County, South Carolina, and owns a home within Midtown, located at 1645 Florentia Street, Mount Pleasant, South Carolina 29466 ("1645 Florentia").

23.     By virtue of her ownership, Plaintiff Headley is a member of the Association and has been since she purchased her residence on or about January 28, 2021.

24.     Plaintiff Headley has been a member of the Association at all times pertinent to the matters complained of in this derivative action.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

25.     Plaintiff Wayne Scarsella ("Plaintiff Scarsella") is a citizen and resident of Charleston County, South Carolina, and owns a home within Midtown, located at 1510 Martel Street, Mount Pleasant, South Carolina 29466 ("1510 Martel").

26.     By virtue of his ownership, Plaintiff Scarsella is a member of the Association and has been since he purchased his residence on or about July 27, 2021.

27.     Plaintiff Scarsella has been a member of the Association at all times pertinent to the matters complained of in this derivative action.

28.     Plaintiff Tinsley, Plaintiff Headley, and Plaintiff Scarsella are similarly situated to the other members of the Association regarding the matters complained of herein; as such, Plaintiff Tinsley, Plaintiff Headley, and Plaintiff Scarsella fairly and adequately represent the interests of the membership and are proper plaintiffs to enforce the rights of the Association.

29.     The Association is unable to assert its own rights herein as it is controlled by the Defendant, and the Association and its members cannot conduct votes or meetings.

30.     Para. 1.11 of the Master Deed defines the common elements at Midtown as including both general and limited common elements.

31.     Various other provisions in the Master Deed further define, qualify, or describe what are the general and limited common elements, and what constitutes part of the individually owned homeowner "units."

32.     The terms of the Master Deed are conflicting and ambiguous as to the nature and ownership of various building components, e.g., exterior walls and cladding.

33.     Any ambiguity in the Master Deed must be construed against the Defendant, the drafter of the Master Deed.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

34.     Regardless of the foregoing ambiguities, Para. 9.3.2 of the Master Deed is clear that the Association is responsible for the repair of the exterior walls, surfaces, and components.

35.     At the time the Certificates of Occupancy were issued, Midtown and its common and limited common elements, and its exterior surfaces and components, contained latent building defects.

36.     The buildings at Midtown suffer from excess humidity and moisture, and resulting moisture, mildew, mold damage, and contamination.

37.     The excess humidity became apparent to many of the homeowners in the late Spring and early summer of 2021.

38.     The excessive humidity and moisture have made the homes unsafe, unhealthy, and uninhabitable.

39.     Numerous Association members, including Plaintiff Tinsley, Plaintiff Headley, and Plaintiff Scarsella have provided repeated notice of the problems to Defendant, and have requested the deficiencies be remedied.

40.     Plaintiff Tinsley, Plaintiff Headley, and Plaintiff Scarsella, along with other members of the Association, have given Lennar liberal access to inspect, analyze, disclose, and to repair.

41.     The excessive humidity and moisture have not been explained, repaired, or remedied by Lennar.

42.     Lennar's many guesswork attempts to repair the excess humidity in many buildings have failed.

43.     Lennar's failed repair attempts included severing, disconnecting, or closing off the outside air to the homes, which it now proposes to reconnect.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

44.     The failed repairs have left the Association members relying upon, and emptying daily, multiple dehumidifiers, even while the Lowcountry takes a break from the high heat and humidity typically present here for most of the year.

45.     Some Association members have been required to move out of Midtown for a period of time to allow for remedial measures to take place.

46.     Lennar has agreed that excessive humidity exists in the homes.

47.     Lennar has not explained why excessive humidity exists in the homes.

48.     Lennar's current repair proposal is to tie a dehumidifier into the ductwork for the 2nd and 3rd floor air handlers; this repair proposal demonstrates that Lennar does not intend to further investigate the cause of the humidity and has no intention of correcting the actual problem causing the humidity.

49.     Upon information and belief, Lennar intends to consider the matter closed once it has installed the dehumidifiers.

50.     One or more Association members have undertaken an investigation of the deficiencies on behalf of the Association and have directly and indirectly employed other professionals in this effort.

51.     The investigation of the humid conditions has revealed numerous construction defects in the common elements, exteriors, and other building systems at Midtown.

52.     For example, the homes and buildings in Midtown have demonstrated extensive linear and step cracking in the brick veneer, as well as deflection and displacement.

53.     The cracking and deflecting brick indicates brick installation defects, building support problems, and other deficiencies.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

54.     Lennar has performed superficial repairs to some of the cracking on the buildings in which Tinsley's and Headley's units are located, without informing Plaintiff Tinsley, Plaintiff Headley, or the other Association members of the repairs or providing any disclosure whatsoever concerning the nature of the problems; the repairs being carried out; or any warranty of such repairs.

55.     Similar repairs have been made to many other buildings in Midtown.

56.     Lennar's repairs are unsightly and, upon information and belief, are superficial.

57.     The superficial repairs serve to conceal the defects rather than repair the defects.

58.     Like former repair attempts, Lennar has attempted to address the resulting construction defect symptom, without addressing the primary causes of the damages, *i.e.*, the construction defects.

59.     Further, the exterior brick walls at Midtown continue to experience brick cracking and displacement, including a linear crack on the building in which Plaintiff Tinsley's Residence is located, that traverses through more than 20 courses of brick; Similar cracking and displacement exists on the buildings in which Plaintiff Headley and Plaintiff Scarsella's Residences are located.

60.     Brick cracking has manifested on many other buildings in Midtown.

61.     Due to the configuration of the townhouse style condominiums, even the Residences with clad siding are affected by the brick issues.

62.     Other buildings in Midtown and appear to have received similar superficial repairs, with a similar lack of disclosure.

63.     Preliminary inspections at Midtown evidence other problems with common and limited common elements, including deficiencies in exterior building envelopes (including the roof system), insulation systems, and resulting consequential damage to non-defective building components.

64. Additionally, the ground infrastructure systems at Midtown have undergone unusual settlement and cracking, resulting in the sinking of stormwater drains, and cracking of surrounding concrete.

65. The foregoing is a result of the Defendant's acts and omissions in the design, construction, sale, and repair of Midtown.

66. The foregoing acts and omissions by Defendant has caused consequential damage at Midtown.

67. The foregoing acts and omissions by Defendant have proximately damaged the Association, which is responsible for the repair of the common, exterior, and other elements and the consequential damages.

68. The foregoing acts and omissions by Lennar, in combination with fortuitous and continuous or repeated moisture/vapor seepage; intrusion; condensation; and/or other similar events, have proximately damaged Midtown.

69. The foregoing is causing stigmatization of Midtown.

70. The forgoing has disrupted the use and enjoyment of the Residences and will require that the Association incur the expense of displacing its members during repairs.

71. Lennar has inspected and tested many of the Residences but has failed to disclose the results of their investigation and has failed to propose and disclose a suitable, well-reasoned repair plan based upon fully disclosed investigation results.

72. Moisture damage remediation by Lennar and others has repeatedly failed exit testing.

73. Attempted repairs and remediation by Lennar and others have repeatedly violated industry standards, allowing the contamination to continue.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

74.     Defendant Lennar knew or should have known of the existence of the inadequate materials and workmanship for many reasons, including its post-construction repair efforts, many of which occurred before completion of many of the Residences.

75.     Defendant Lennar had a duty to design, develop, construct, and repair the Midtown buildings, in a workmanlike manner with suitable materials and free from all defects, and in accordance with the applicable building code, approved plans, good workmanship, and construction industry and engineering standards.

76.     The exterior cladding and building envelope systems and other systems at Midtown are not in compliance with the applicable building codes, proper workmanship, good practices, approved plans, and/or industry standards and must be corrected or replaced.

77.     The aforementioned deficiencies and resulting damages show that Lennar breached its duties to the Association.

78.     As a direct and proximate result of Lennar's violation of its legal duties, Plaintiff will have to incur expense for the retention of experts to determine the cause of the damage, the scope of work required for the remediation of the Residences, and the repair of the damage.

## DEMAND AND FUTILITY OF DEMAND

79.     Defendant Lennar has the right under the governing documents to appoint and remove Directors of the Association.

80.     Defendant Lennar is presently in complete control of the Association, and any further demand on the Association to hold Lennar accountable would be akin and tantamount to a demand on Lennar to sue itself.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

81.     Plaintiff Tinsley, Plaintiff Headley, Plaintiff Scarsella, and the Association's members have already made many demands on Lennar for disclosures, investigation, and other action to address problems.

82.     For example, on August 30, 2021, Plaintiff Tinsley and Plaintiff Headley, along with other owners or co-owners of 10 other residences in Midtown, requested in writing that Lennar provide "written disclosure and documentation of the construction defects impacting their homes, as well as Lennar's proposed scope of repair and proposed repair timeline…" (**Exhibit A**). This written demand also requested that a knowledgeable representative of Lennar meet the Association member signatories at the pavilion at Midtown on September 3, 2021, at 4 P.M. to answer their questions about the construction defects and remediation design at Midtown. The design Lennar provided in response was inadequate and lacking in assurances and details and Lennar failed to appear to answer member's questions. Lennar amended its design approximately 30 days after it was provided, without explanation.

83.     The member signatories were present on September 3, 2021, at 4 P.M., but no representative of Lennar appeared to address Plaintiff Tinsley's, Plaintiff Headley's, and the other signatories' concerns.

84.     Lennar's response to the August 30, 2021 demand demonstrates the futility of making any further demand on Lennar. Lennar failed to adequately respond to the request for information regarding construction defects, or provide requested documents, or even provide a representative to address Plaintiff Tinsley and Plaintiff Headley's concerns. This conduct demonstrates that Lennar is self-interested, and any further demands by Plaintiff Tinsley and Plaintiff Headley for corrective action would be futile.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

85.     Furthermore, Lennar has proposed an incomplete repair scope to repair the humidity conditions, leaving numerous other construction deficiencies undisclosed and unaddressed. This lack of forthrightness and failure to provide a proper scope of repair demonstrates that Lennar cannot be relied upon to place the Association's interest above its own and is further evidence that any future demands on Lennar would be futile and/or would be met with similar unsatisfactory results.

86.     Plaintiff Tinsley, Plaintiff Headley, and Plaintiff Scarsella's further demand upon the Association to rectify the wrongs described herein would be futile and is, therefore, excused under the futility doctrine.

87.     For the above listed reasons, Plaintiff Tinsley, Plaintiff Headley, and Plaintiff Scarsella are excused from making any further effort to obtain the relief requested herein from the Association and Lennar.

## ESTOPPEL FROM PLEADING WARRANTY OBLIGATION

88.     Lennar is estopped from relying on any written warranty obligation as a defense to Plaintiff's claims.

89.     The Defendant's work performed and/or materials supplied at Midtown have not lived up to Defendant's warranties and representations, and, given the defective condition of Midtown, and the premature failure and deterioration of the life expectancy of the building components that require unexpected maintenance; repair; and/or replacement, the written warranty has proven not to be of any value.

90.     Defendant, in the exercise of required diligence, which negligently failed to occur, should have known that the Residences were defective in design, construction and/or repair, and the building components were not fit for their ordinary and intended use, were not merchantable,

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

and failed to perform in accordance with the advertisements, marketing materials, and warranties disseminated by Defendant or with the reasonable expectations of ordinary consumers such as Plaintiff Tinsley, Plaintiff Headley, and Plaintiff Scarsella. Furthermore, the Limited Warranty provided by Defendant, while it purports to be a benefit to the purchaser, is actually a detriment, in that it acts to remove rights from the purchaser, as opposed to granting them.

91.     Additionally, the Limited Warranty fails to disclose that it is a reduction of rights, not an enhancement of warranty.

92.     Additionally, the Warranty is deceptively mislabeled, as it would be more accurate to label it "Waiver of Normal Rights for Defective Residential Construction."

93.     The Limited Warranty does not bind the Association as the Association is not a signatory to it, or any purchase contract, and furthermore has no bargaining capability to enter into agreements with the Declarant, given that it and Declarant are presently one and the same.

94.     In addition, any warranty provided by Defendant fails of its essential purpose because its purports to warrant that the Residences and/or their building components will be free from defects for a limited period of time when in fact the Residences and/or their building components fall far short of the expected life cycle of the Midtown townhomes. Further, Defendant's warranties are woefully inadequate to repair and replace failed building components, let alone reimburse for any damage suffered to the underlying structure.  The remedies available under Defendant's warranties are limited to such an extent that they do not provide a minimum adequate remedy.

95.     Moreover, Defendant's warranties exclude any warranty for repair work; Lennar's attempt to make its repair work unwarrantable permits it to make any repair it deems acceptable

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

and then walk away from a project with no remaining liability for the original problem or the defective repairs, which is an unconscionable limitation.

96.     Moreover, given the comparative posture, resources, sophistication, and knowledge of the parties, the warranty limitations are procedurally unconscionable; and given Defendant knew or should have known that the defects existed at the time they issued the warranty, the limitations are substantively unconscionable.

97.     As a result, any limitations on the remedies encompassed within Defendant's warranties are unconscionable and unenforceable, and therefore, Defendant is estopped from relying on the same.

98.     In addition, several Association members have provided inspection reports to Lennar and requested repair of numerous items, including common elements, in their reports prior to the expiration of their warranty periods, including issues complained of herein, and Lennar has failed to respond, address, and/or adequately repair the items, demonstrating the futility of any reliance on Lennar's purported warranty.

99.     And, as Defendant's repair attempts have repeatedly failed, the Defendant's acts/omissions demonstrate that it is unwilling or unable to perform under its own warranty, that its warranty is inadequate, and that the warranty cannot in good conscience be relied upon to limit the Plaintiff's rights.

**ESTOPPEL FROM PLEADING NOTICE OF OPPORTUNITY TO CURE**

100.     The Defendant is estopped from relying on the Notice of Opportunity to Cure Act to stay the progression of Plaintiff's claims.

101.     The Defendant was put on notice of Midtown's defective conditions within any statutory period prescribed by the Act.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

102.     In addition, the Defendant was given access to the Residences on every occasion requested and was provided an opportunity to cure the Residences' defective conditions but failed to adequately perform.

## ESTOPPEL FROM PLEADING ANY ANTI-SUIT PROVISIONS

103.     The Defendant is estopped from relying on any anti-suit provisions contained in the Purchase Contract or other governing documents and contracts because such provisions are void pursuant to public policy and the Horizontal Property Regime Act and/or voidable as such constitutes a breach of the Defendant's fiduciary duty to Plaintiff. Furthermore, said provisions are adhesive and one-sided in nature, and are therefore void as unconscionable.

104.     Upon information and belief, no applicable arbitration provisions exist to bind the Association.

105.     Additionally, any anti-suit provisions which would limit the remedies available to the Plaintiff, including any waiver of consequential damages and implied warranties, are unconscionable, void, and are an affront to the public policy of this state, and Lennar is estopped from asserting that these limitations apply to the Association.

106.     As a result, Defendants cannot rely on the anti-suit provisions contained in the purchase contract or other governing documents or contracts.

## FOR A FIRST CAUSE OF ACTION
### (Negligence and Gross Negligence/Recklessness)

107.     Plaintiff repeats and re-alleges the above paragraphs as if fully set forth verbatim.

108.     Defendant owed duties to Plaintiff in connection with the work it designed, performed, and caused to be performed at the Residences.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

109.    Defendant had a duty to cause the work to be performed at the Midtown to be in accordance with applicable building codes, approved plans and specifications, industry standards, and in a careful, diligent, and workmanlike manner, with suitable materials, and free from defects.

110.    The Association and its members were at all times the foreseeable end users of the materials and services provided by Defendant.

111.    Defendant breached its duties to Plaintiff in a manner that was negligent and careless in the following particulars:

a.  In failing to construct Midtown in accordance with the applicable building codes, good design, standard building practices, approved and permitted plans, and accepted construction industry standards and practices;

b.  In failing to use due care in selecting, supplying, installing, and servicing the building systems and components at Midtown;

c.  In implementing design changes after design without considering and planning for the ramifications of the design changes;

d.  In failing to properly supervise the work performed at Midtown;

e.  In failing to properly coordinate the subcontractors;

f.  In failing to properly construct an adequate exterior building envelope;

g.  In failing to properly manage air and moisture infiltration;

h.  In failing to properly insulate the buildings;

i.  In failing to adequately diagnose the cause of the defective conditions;

j.  In failing to make proper repairs;

k.  In failing to diagnose, design, and offer a well-supported solution;

l.  In covering up its own defective work and the defective work of others;

m.  In failing to act as a reasonable person would in the circumstances then and there prevailing; and

n.  Other deficiencies or failures as will be proven during discovery and at trial.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

112.    Plaintiff has been damaged as a direct and proximate result of the negligence and carelessness of the Defendant.

113.    The violation of applicable building codes constitutes negligence *per se* and may constitute evidence of gross negligence.

114.    If it is shown that said failures were committed with gross negligence and/or recklessness, willfulness, or wantonness, Plaintiff is entitled to an award of punitive damages against the Defendant.

115.    As a result of the foregoing, Plaintiff is entitled to a judgment against Defendant for all actual, direct, indirect, resulting, consequential, and punitive damages in an amount to be determined at trial.

## FOR A SECOND CAUSE OF ACTION
### (Breach of Implied Warranty)

116.    Plaintiff repeats and re-alleges the above paragraphs as if fully set forth verbatim.

117.    The design, construction, sale, and repair of Midtown came with implied warranties that the work would be performed in a careful, diligent, and workmanlike manner and that Midtown would be constructed with suitable materials and components and free from all defects and be of superior quality befitting of an upscale condominium complex.

118.    The design, construction, sale and repair of Midtown, and the components used therein, came with implied warranties of fitness, merchantability, workmanship, and habitability.

119.    Defendant has breached its warranties by designing, constructing, and repairing Midtown in a defective manner as set forth above.

120.    The Common Elements and Limited Common Elements are failing prematurely, which evidences the Defendant's breach of its implied warranties.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

121.    As a direct and proximate result of Defendant's breach of its warranties, the Association has been damaged and the Association is entitled to a judgment against Defendant for all actual, direct, indirect, resulting, and consequential damages, as well as expectation damages, in an amount to be proven at trial.

### FOR A THIRD CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

122.    Plaintiff repeats and re-alleges the allegations contained in the above paragraphs as if more fully set forth herein.

123.    The Defendant has a fiduciary relationship to the Association, the regime, and Midtown by virtue of 1) its capacity as the promoter, developer, and steward of Midtown; 2) its control of the Association; and 3) its role as the actual or de facto Board of Directors of the Association.

124.    The designation of the components of Midtown and the Residences at Midtown evidences a complicated, if not conflicting, overlap between the Common Elements, Limited Common Elements, and Units.

125.    The complexity of ownership rights and responsibilities described above requires that all defective components must be addressed in a single proceeding and include all necessary parties, necessary claims, and full and complete adjudication of issues.

126.    The governing documents, as written, reflect an attempt by Defendant to carve up and separate the ownership of the building components in an effort to require the defects and consequential damages to be adjudicated in up to seventy-three (73) separate proceedings.

127.    Lennar deliberately drafted the Master Deed and its sales contracts to its advantage by purporting to bind the Association's members with anti-suit provisions that preclude necessary joinder of parties and claims; and purports to eliminate all preclusive effect of prior rulings.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

128.    This conduct purports to prevent homeowners from joining the Association in a single action against the Defendant, impeding the Association's ability to pursue all proper remedies.

129.    Defendant breached its fiduciary duties owed to the Association by:

(a) Inserting anti-suit provisions in the Master Deed;
(b) Inserting anti-suit provisions in the Master Deed and sales contracts which purport to prevent the Association from addressing the entirety of the defects in a single legal action;
(c) failing to act in the best interest of the Plaintiff; and
(d) such other failures to be shown at trial.

130.    As a direct and proximate result of the Defendant's breach of fiduciary duty, the Association and its members have been damaged as hereinabove set forth and as to be further proven at trial.

## FOR A FOURTH CAUSE OF ACTION
### (Declaratory Judgment)

131.    Plaintiff repeats and re-alleges the above paragraphs as if fully set forth verbatim.

132.    Plaintiff seeks and is entitled to a declaration that any anti-suit provisions in the Master Deed or any other document which purports to restrict or inhibit the Association's ability to do its job and address all repairs in a single cause of action is void as against public policy and are invalid.

## FOR A FIFTH CAUSE OF ACTION
### (Accounting)

133.    Plaintiff repeats and re-alleges the above paragraphs as if fully set forth verbatim.

134.    Plaintiff seeks and is entitled to an order for the Defendant to account to the Association and its members for all financial transactions since the inception of the Association.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

WHEREFORE, Plaintiff demands a trial by jury and prays for actual, consequential, and special damages expected to exceed fifteen million dollars, punitive damages, reasonable attorneys' fees for the derivative action and common fund created thereby, costs of suit, prejudgment interest, accounting, and granting of such further relief as the Court deems just and proper.

Respectfully submitted,

JUSTIN O'TOOLE LUCEY, P.A.


/s/ Justin Lucey
Justin O'Toole Lucey, Esq.
Collin Fuller, Esq.

415 Mill Street (29464)
Post Office Box 806
Mount Pleasant, SC 29465-0806
(843) 849-8400 phone
(843) 849-8406 fax
jlucey@lucey-law.com
cfuller@lucey-law.com

December 30, 2021
Mount Pleasant, South Carolina                    *Attorneys for Plaintiff*


**Attachments: Ex. A; Verifications**

# EXHIBIT A

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

**Tasha Agnew**
1521 Martel Street
Mount Pleasant, SC 29464

**Thomas Kutyla**
1513 Martel Street
Mount Pleasant, SC 29464

**Jeremy Kitchens**
1647 Florentia Street
Mount Pleasant, SC 29464

**William Deford**
1635 Florentia Street
Mount Pleasant, SC 29464

**Lea Kutyla**
1513 Martel Street
Mount Pleasant, SC 29464

**Scott McWatty**
1623 Florentia Street
Mount Pleasant, SC 29464

**Emily Chapman**
1517 Martel Street
Mount Pleasant, SC 29464

**Caroline Hall**
1635 Florentia Street
Mount Pleasant, SC 29464

**Amanda McWatty**
1623 Florentia Street
Mount Pleasant, SC 29464

**Kim Conway**
1631 Florentia Street
Mount Pleasant, SC 29464

**Terry Headley**
1645 Florentia Street
Mount Pleasant, SC 29464

**Amanda Schroeder**
1643 Florentia Street
Mount Pleasant, SC 29464

**David Ferm**
1616 Florentia Street
Mount Pleasant, SC 29464

**Robert Headley**
1645 Florentia Street
Mount Pleasant, SC 29464

**Matthew Storen**
1614 Florentia Street
Mount Pleasant, SC 29464

**Karen Tinsley**
1637 Florentia Street
Mount Pleasant, SC 29464

August 30, 2021

**VIA E-MAIL**

Will Herndon
Vice President, Customer Care
Lennar Corporation
681 Greens Parkway
Houston, TX 77077

**Re:**     *Construction Defects – Lennar Midtown Townhomes, Mount Pleasant, South Carolina*

Dear Will:

The above listed and undersigned homeowners hereby request complete written disclosure and documentation of the construction defects impacting their homes,[1] as well as Lennar's proposed scope of repair and proposed repair timeline (both in detail), **no later than Thursday, September 2, at 5 p.m. (EST)**; and that Lennar present an informed representative to answer our questions regarding the defects, proposed repair, and timeline under the main pavilion at 4pm on Friday, September 3.

We also demand immediate release of all forensic reports, repair close out reports, and testing reports regarding each of our homes, which Lennar has been withholding from us.

---

[1] We are principally addressing the first, second and third floor humidity, mildew, and mold issues which Lennar has been investigating in many of our homes since July.

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

Sincerely,



Tasha Agnew

William Deford

Emily Chapman

Kim Conway

David Ferm

Laura Ferm

Caroline Hall

Terry Headley

Robert Headley

Thomas Kutyla

Lea Kutyla

Jeremy Kitchens

Amanda McWatty

Scott McWatty

Amanda Schroeder

Matthew Storen

Karen Tinsley

cc:     Mark Sustana
        General Counsel, Lennar Corporation

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

# VERIFICATION OF
# TERRY HEADLEY

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| | FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | CASE NO.: 2021-CP-10-_____ |

Karen Tinsley, Terry Headley, and Wayne Scarsella, Derivatively, on behalf of the Midtown Townhomes HPR Owners Association, Inc.

               Plaintiffs,

    v.

Lennar Carolinas, LLC a/k/a Lennar Carolinas a/k/a Coastal Carolinas Division of Lennar a/k/a Lennar Corporation,

               Defendant.

**Verification**

Plaintiff, Terry Headley, does hereby affirm, under penalty of perjury, that the forgoing factual allegations in her complaint against Lennar are made upon personal knowledge and belief, and after consultation with her undersigned counsel, and are true and correct.

Terry Headley

Date: 12.30.2021

Mt. Pleasant, South Carolina

1

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

# VERIFICATION OF WAYNE SCARSELLA

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| | ) FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) CASE NO.: 2021-CP-10-_____ |
| | ) |
| Karen Tinsley, Terry Headley, and Wayne Scarsella, Derivatively, on behalf of the Midtown Townhomes HPR Owners Association, Inc. | ) |
| | ) |
| | ) |
| | ) |
| | ) **Verification** |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| Lennar Carolinas, LLC a/k/a Lennar Carolinas a/k/a Coastal Carolinas Division of Lennar a/k/a Lennar Corporation, | ) |
| | ) |
| | ) |
| Defendant. | ) |

Plaintiff, Wayne Scarsella, does hereby affirm, under penalty of perjury, that the forgoing factual allegations in his complaint against Lennar are made upon personal knowledge and belief, and after consultation with his undersigned counsel, and are true and correct.

_____
Wayne Scarsella

Date: 12/29/21

Mt. Pleasant, South Carolina

1

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

# VERIFICATION OF KAREN TINSLEY

ELECTRONICALLY FILED - 2021 Dec 30 10:27 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1005803

STATE OF SOUTH CAROLINA     )   IN THE COURT OF COMMON PLEAS
                          )   FOR THE NINTH JUDICIAL CIRCUIT

COUNTY OF CHARLESTON        )   CASE NO.: 2021-CP-10-_____

Karen Tinsley, Terry Headley, and Wayne )
Scarsella, Derivatively, on behalf of the )
Midtown Townhomes HPR Owners )
Association, Inc.

                          )
          Plaintiff,         )

      v.                  )

Lennar Carolinas, LLC a/k/a Lennar Carolinas )
a/k/a Coastal Carolinas Division of Lennar )
a/k/a Lennar Corporation,

          Defendant.     )

**Verification**

Plaintiff, Karen Tinsley, does hereby affirm, under penalty of perjury, that the forgoing factual allegations in her complaint against Lennar are made upon personal knowledge and belief, and after consultation with her undersigned counsel, and are true and correct.

*Karen Tinsley*
Karen Tinsley

Date: 12/30/21

Mt. Pleasant, South Carolina

1